JOHN VANN, Plaintiff-Appellee, v. CINDY VEHRS, Defendant-Appellant.
Second District    No. 2—92—0994

Opinion filed April 19, 1994.

Terry D. Slaw, of Levine, Shifrin & Associates, Ltd., of Schaumburg, for appellant.

William Diamant, of Hinsdale, for appellee.

JUSTICE QUETSCH delivered the opinion of the court:

The plaintiff, John Vann, filed a replevin suit in the circuit court of Du Page County for the recovery of an engagement ring he gave to the defendant, Cindy Vehrs. In his complaint, the plaintiff alleged that he gave the ring to the defendant on or about August 15, 1988, but that she postponed the wedding indefinitely in June 1989 and refused to return the ring to him. The defendant filed a motion to dismiss pursuant to section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 1992)), contending that the replevin action was premised upon the breach of a promise to marry and that the plaintiff's action was not brought within the one-year limitations period set forth in the Breach of Promise Act (740 ILCS 15/6 (West 1992)). The defendant also contended that the plaintiff did not comply with the Act's requirement that within three months of the breach he notify her of his intent to file suit (740 ILCS 15/4 (West 1992)). The trial court denied the motion to dismiss, ruling that a replevin action for the return of an engagement ring falls outside the scope of the Breach of Promise Act. Following a bench trial, the court ruled that the engagement was mutually broken, and it ordered that the ring be returned to the plaintiff.

On appeal, the defendant contends that: (1) a person bringing a replevin action for the return of an engagement ring must comply with the three-month notice requirement and one-year limitations period set forth in the Breach of Promise Act, and since the defendant did not so comply, the trial court erred in denying her section 2—619(a)(5) motion to dismiss; and (2) the trial court erred in ordering her to return the engagement ring to the plaintiff since she was not the sole cause of the breakup of the engagement.

We first address the defendant's argument that a replevin action for the return of an engagement ring must comply with the notice requirement and limitations period set forth in the Breach of Promise

Act. This is a case of first impression in Illinois, and we begin our analysis by examining the stated legislative purpose of the Act:

"It is hereby declared, as a matter of legislative determination, that the remedy heretofore provided by law for the enforcement of actions based upon breaches of promises or agreements to marry has been subject to grave abuses and has been used as an instrument for blackmail by unscrupulous persons for their unjust enrichment, due to the indefiniteness of the damages recoverable in such actions and the consequent fear of persons threatened with such actions that exorbitant damages might be assessed against them. It is also hereby declared that the award of monetary damages in such actions is ineffective as a recompense for genuine mental or emotional distress. Accordingly, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by limiting the damages recoverable in such actions, and by leaving any punishments of wrongdoers guilty of seduction to proceedings under the criminal laws of the state, rather than to the imposition of punitive, exemplary, vindictive or aggravated damages in actions for breach of promise or agreement to marry. Consequently, in the public interest, the necessity for the enactment of this chapter is hereby declared as a matter of legislative determination." 740 ILCS 15/1 (West 1992).

Section 2 of the Act provides that the "damages to be recovered in any action for breach of promise or agreement to marry shall be limited to the actual damages sustained as a result of the injury complained of." (740 ILCS 15/2 (West 1992).) Section 3 states that "[n]o punitive, exemplary, vindictive or aggravated damages shall be allowed in any action for breach of promise or agreement to marry." (740 ILCS 15/3 (West 1992).) Sections 4, 5, and 6 set forth the requirements that a party bringing an action for the breach of the promise to marry must notify the other party, within three months of the breach, of his intent to file suit and must file the suit within one year after the cause of action accrued. 740 ILCS 15/4, 5, 6 (West 1992).

■ We think it clear from the language of the Act that the General Assembly intended to abolish actions for punitive and aggravated damages, including damages for mental and emotional distress, arising from the breach of a promise to marry, while retaining actions for actual damages suffered from such a breach. It also intended that persons bringing actions for the actual damages incurred from the breach of a promise to marry must comply with the notice and limitations period set forth in the Act. However, nothing in the language of the Act indicates that it should be extended to cover actions to re-

cover engagement rings or other gifts made on the condition of marriage, where the marriage did not occur.

In support of this holding, we note the majority view among jurisdictions with "Heart Balm" statutes (which preclude all civil causes of action for breach of a promise to marry) that such statutes do not apply to replevin actions for the recovery of property transferred in contemplation of marriage. The rationale for this rule is that an action for a breach of the promise to marry seeks the recovery of those damages "based upon confused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered." (*Piccininni v. Hajus* (1980), 180 Conn. 369, 373, 429 A.2d 886, 888.) In contrast, a replevin action for the return of an engagement ring and other gifts made in contemplation of marriage does not seek damages from the breach of the promise to marry but instead requests the return of property to which the other party allegedly no longer has a right. See *Wion v. Henderson* (1985), 24 Ohio App. 3d 207, 494 N.E.2d 133; *Wilson v. Dabo* (1983), 10 Ohio App. 3d 169, 461 N.E.2d 8; Annot., 46 A.L.R.3d 578 (1972).

We agree with the majority view that a replevin suit for the return of an engagement ring and other gifts made on the condition of marriage is not an action for the breach of a promise to marry. Therefore, the plaintiff's replevin action for the return of the engagement ring was not barred for any failure to comply with the Breach of Promise Act, and the trial court did not err in denying the defendant's section 2—619 motion to dismiss.

■ We next address whether the trial court erred in ruling that the engagement ring be returned to the plaintiff. The evidence at trial established that the plaintiff proposed to the defendant on August 3, 1988, she accepted, and they set a wedding date for October 20, 1989. In June 1989, they mutually agreed to postpone the wedding because the defendant's mother had become upset that the plaintiff and the defendant had recently spent the weekend together in Colorado. For the next several months, the parties discussed rescheduling the wedding; however, due to the defendant's job-related travel schedule, she was unable to agree to a new wedding date. On January 13, 1990, the parties met at a restaurant and the plaintiff told the defendant that he felt their relationship was at a standstill and she had no right to make him wait for a wedding date. The plaintiff told the defendant that if she was not going to set a new date, she should return the ring to him. The plaintiff never said that "the engagement is off"

or words to that effect, but the defendant testified that she interpreted their conversation to mean that the plaintiff no longer wanted to marry her. The defendant did not return the ring to the plaintiff, and the plaintiff testified that he felt they were still engaged as of January 13, 1990.

On January 14, 1990, the defendant flew to California on business. The plaintiff testified that he called the defendant while she was in California in the hope of continuing the relationship, but that she acted "cool" over the phone. The plaintiff further testified that although the defendant never specifically said that "the engagement is off" or words to that effect, he felt that the defendant had terminated the engagement by the "cool" way she acted when he called her. The parties apparently did not see each other again for several months, at which time the defendant indicated that she was not interested in a further romantic relationship with the plaintiff. The plaintiff asked that the engagement ring be returned to him; the defendant refused.

The trial court determined that the engagement was broken by the actions of both parties, and it ordered the defendant to return the engagement ring to the plaintiff. We agree that the parties mutually broke their engagement by the following actions: (1) the defendant's inability to set a new wedding date due to her constant travelling; (2) the plaintiff's request that the ring be returned to him if the defendant did not set a new wedding date; (3) the defendant's "cool" behavior when the plaintiff called the defendant in California; and (4) the parties' failure to see each other for several months after their argument on January 13, 1990. We proceed to determine whether the plaintiff is entitled to the return of the engagement ring.

The defendant argues that she is entitled to keep the ring since the engagement was mutually broken. In support of this argument, she cites *Harris v. Davis* (1986), 139 Ill. App. 3d 1046. There, the plaintiff gave the defendant an engagement ring in contemplation of marriage. The defendant subsequently broke the engagement and threw the ring into a field. (*Harris*, 139 Ill. App. 3d at 1047.) The plaintiff brought an action against the defendant for $1,390, the value of the ring. (*Harris*, 139 Ill. App. 3d at 1047.) The court held that the party who breaks the engagement must return all gifts received in contemplation of the marriage, and it held the defendant liable for the value of the engagement ring. *Harris*, 139 Ill. App. 3d at 1048.

The defendant in the present case contends that according to *Harris* she is entitled to keep the engagement ring since she did not

unilaterally break off the engagement. We do not agree. The *Harris* court simply held that the party who breaks off the engagement must return any gifts received in contemplation of marriage, including an engagement ring; it made no holding as to which party is entitled to the engagement ring when the engagement is mutually broken.

Although this question is one of first impression in Illinois, the majority view among those jurisdictions that have ruled on the issue is that the donor of the ring is entitled to its return where the engagement is mutually broken. The rationale for this rule is that an engagement ring is a gift conditional on the subsequent marriage of the parties, and when the condition is not fulfilled, the donee no longer has any right to the ring. See *Spinnell v. Quigley* (1990), 56 Wash. App. 799, 785 P.2d 1149; Annot., 46 A.L.R.3d 578 (1972).

We agree with the majority view that the donor of an engagement ring and other gifts made in contemplation of marriage is entitled to their return when the engagement is mutually broken. We therefore affirm the trial court's order in this case that the engagement ring be returned to the plaintiff.

For the foregoing reasons, we affirm the trial court.

Affirmed.

WOODWARD and McLAREN, JJ., concur.